Municipal Court of Cincinnati.

CITY OF CINCINNATI V. CATHERINE MILLS.

(Decided November 7, 1929.)

*Harry J. Wernke* and *Robert McIntosh,* prosecuting attorneys, for plaintiff.

*Louis Rubenstein,* for defendant.

PICHEL, J.

The defendant is charged with the unlawful possession of liquor, to-wit: home brew beer, and disorderly conduct, both in violation of the ordinances of the city of Cincinnati.

This hearing is had upon a motion filed before trial, to suppress the offering in evidence of the beer seized by the police.

The evidence offered develops that the defendant had become boisterous and had annoyed persons in the house, which conduct had caused the issuance of a warrant for her arrest, charging her with disorderly conduct. She lived in the second floor of a two-story apartment house. A police officer of the city was sent to her house to arrest her on the warrant, and he knocked upon the door leading to her apartment, which was on the first floor, and the defendant answered, and he accompanied her up to the

second floor; where he told her to put on her coat, which she did, and he then placed her under arrest. At that time the officer had only entered her front room, and he had performed his duty, and she was in custody. Just about as he was to leave the front room with the accused in custody, he smelled coming from some place in her apartment, the odor of beer brewing. He then began to search, but found nothing in the front room, where he had executed the warrant. Not being satisfied he continued his search; went through another room, opening the doors as he went. He found nothing in the second room, and he went through a third room, and found nothing there. Continuing, he went through the door of that room, into a hallway, and across the hall he opened another door and entered, and found home-brew beer.

The question now arises on this motion to suppress the introduction of this home-brew beer into evidence, as to whether or not this search was proper. This does not present a case where there is "an assertion of the right on the part of the government, always recognized under English and American law, to search the person of the accused, when legally arrested, to discover and seize the fruits or evidence of crime." *Weeks* v. *United States*, 232 U. S., 392, at page 392. This is not a case where the accused was searched, or where her home was searched at the time, for any reason, to prove her guilty of the offense of disorderly conduct.

There being no claim made whatsoever, that the defendant sold or trafficked in this liquor, it would have been impossible for the police to obtain a search warrant for her premises. Section 6212-16 General Code of Ohio. It may be that a different conclusion as to the law might be reached in this case, if something was found except intoxicating liquor, but the Legislature has announced the policy of the law. As said by Mr. Justice McReynolds, in *United States* v. *Berkeness*, 275 U. S., 149, at page 155, "but the emphatic declaration that no private dwelling shall be searched, except under specified circumstances, discloses a general policy to protect the home against intrusion through the use of search warrants." Paraphras-

ing the comment made by Federal Judge Watkins, in *De-Pater* v. *United States,* 34 (2d) Fed., page 275, at page 278, I might add, that it is not the province of this court to inquire into the wisdom of the Legislature in enacting Section 6212-16 of the General Code, which provides that there must be proof of unlawful sale before a search warrant shall issue. It is the duty of the court to determine the law as it finds it, even though the result be greatly to hamper and embarrass officers in their efforts to curb the illegal possession of intoxicating liquor in private homes.

The court then comes to the point considering whether, in a case like this, where no search warrant could have been obtained, this search, made after the execution of a warrant for the arrest of a person, was valid. The evidence all showed that this was the residence of the accused. *Rosanski* v. *State,* 106 O. S., 442, Syllabus No. 4. What then, was the power of the officer, when he smelled the beer brewing? Section 57-2, of the Code of Ordinances, of the City of Cincinnati—Codification of 1928, says—"in the performance of the duties imposed upon them by law, the chief of police or any police officer of the city of Cincinnati may at all reasonable hours enter into or upon all the buildings, places or things, excepting such buildings, places or things or parts thereof as are used exclusively for *bona fide* private residence purposes." Also, see Section 6212-27 General Code of Ohio. Later, in the same section, it reads as follows—"provided that nothing in this section shall be construed to permit any person or persons, to enter or search with or without a warrant, a *bona fide* private residence, as herein defined." The prohibition, therefore, is both as to entering or searching, with or without a warrant, a *bona fide* private residence.

The next question to be considered, is whether the officer smelling the odor of the beer brewing, was sufficient for him to search the other rooms in accused's living quarters. This is answered in the negative by the case of *DePater* v. *United States,* 34 (2nd) Fed., page 275. (Advance sheets, October 17, 1929.) This case is all the more convincing as an authority to the court, because a still was

found. The syllabus reads as follows: No. 3—"Where prohibition agents, on driving up to defendant's dwelling, detected odor of mash, and, on requesting defendant's permission to go into the house and satisfy themselves, were refused admission, unless they had a warrant, whereon officers climbed on porch and opened shutter of second story window and discovered a still, ten gallons of whiskey, and several barrels of whiskey mash, held that their purpose in entering defendant's house was not to arrest parties engaged in committing a crime in their presence but for purpose of verifying their suspicion, and search was therefore illegal, and evidence obtained thereunder inadmissible under 18 U. S. C. A., Sec. 53; 27 U. S. C. A., Sec. 39." No. 4—"Courts must determine the law as they find it, even though result be greatly to hamper and embarrass prohibition officers in their efforts to curb manufacture or illegal possession of whiskey in private homes." No. 5—"Under 18 U. S. C. A., Sec. 53, and 27 U. S. C. A., Sec. 39, utmost caution in search of private residences, for liquor is required even as an incident to a lawful arrest, and as a prerequisite to such search there must be certainty of knowledge of both the nature and the instant perpetration of the crime."

The only difference the court can see between the DePater case and the instant case, is that in the one, the officers were outside the dwelling and in the present case, the police officer was inside the dwelling, and had completed his task of executing a warrant, when he undertook to verify his suspicion that there was home-brew some place in the dwelling. There was no reason to go in the other rooms to make the arrest, because the accused was already under arrest. She was not arrested on the liquor charge until after the liquor had been found in the search of her other rooms. Paraphrasing what District Judge Watkins said in the DePater case, at page 276, it is significant that the police officer did not arrest the defendant after he smelled the home-brew but he went ahead and searched, before placing an additional charge against her. There was nothing more than a strong suspicion on the part of the officer before he began the search, that

there was some home-brew beer there. He therefore, did not have positive knowledge of a crime committed in his presence. There can therefore, be no finding that he went into the other rooms to arrest anybody. It certainly would have been different, if in the room itself, where the officer executed the warrant, he saw, without a search, absolute proof, by the presence of the liquor and its containers, that she was guilty of an offense.

It is not for the court to pass upon the policy of the law, as to the search of private homes for intoxicating liquor. It must accept the rule laid down, and abide by it. When it comes to searching for intoxicating liquor, the police officers are bound to obey it. In this case, the policeman was not justified, under the decisions given, in attempting to verify his suspicion by instituting a search of her home. It is true that he was lawfully in the front room of her premises, but his task of executing the warrant was completed.

For the reasons given, the motion to suppress the introduction of the home-brew beer in evidence, will be granted. The court, having heard all the evidence which could be offered on the trial of the accused, by consent of the parties, will dismiss the liquor charge, and fine the defendant on the disorderly conduct charge.